UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Shajuan Ingram,

    Plaintiff,

v.

Henry Ford Health System,

    Defendant.
_____/

Case No. 13-11567

Honorable Nancy G. Edmunds

**ORDER AND OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [12]**

Before the Court is Defendant Henry Ford Health System's motion for summary judgment on Plaintiff Shajuan Ingram's Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), and Michigan Persons with Disabilities Civil Rights Act (PWDCRA) Mich. Comp. Laws § 37.1101 et seq., disability discrimination claims against it. (Dkt. 12.) Because the Court agrees with Defendant that neither the ADA nor the PWDCRA provides for a reverse-disability discrimination cause of action and Plaintiff further cannot prove that she engaged in any protected activity to support a retaliation claim, the Court GRANTS Defendant's motion for summary judgment.

**I.    Facts**

On June 23, 2008, Defendant hired Plaintiff as a nursing team leader at Defendant's Home Care North Office branch. (Pl.'s Dep. at 36.) Plaintiff reported to Lillian Stevenson. (*Id.*) On August 30, 2009, Defendant promoted Plaintiff to a nursing supervisor, again to report to Stevenson. (Pl.'s Resp., Ex. 1.)

Plaintiff points to her 2011 performance evaluation to show that she met or exceeded Defendant's legitimate business expectations. (Pl.'s Resp., Ex. 2, 2011 Evaluation.) Plaintiff's evaluation does show, at the time of the evaluation, that she met or exceeded all the expectations that that evaluation categorized.

As part of her duties as a nursing supervisor, Plaintiff had the authority to issue "corrective action" to the nurses who worked under her. (Pl.'s Dep. at 138.) Plaintiff was able to initiate corrective action, but was not able to withdraw the corrective action. (*Id.*) Plaintiff states that only Stevenson or her other boss, Kathy Bronikowski, could withdraw corrective action. (*Id.*)

Plaintiff acknowledges that she initiated corrective action for nurses that Stevenson or Bronikowski would override and not issue. (Pl.'s Dep. at 91-92, 147, 214.) Plaintiff states that it was her job to initiate the corrective action and that, when Stevenson or Bronikowski overruled her, she did not have a problem being overruled. (*Id.* at 214.)

The circumstances that gave rise to this case center around Plaintiff's interactions with another nurse, LaQuita Anderson, who was a nurse leader, a position that Plaintiff states fell under her position. Plaintiff alleges that Anderson received preferential treatment because she had mentally challenged children. (Pl.'s Dep. at 87-88.) Plaintiff states that Stevenson showed preferential treatment towards Anderson by overlooking her poor work performance. (*Id.* at 69.) Plaintiff alleges that Anderson was "deficient" in her work every day. (*Id.* at 72.) Plaintiff maintains that Stevenson prevented her from effectively disciplining Anderson. (*Id.* at 114.) Plaintiff says that she had meetings "all the time" with Stevenson about Anderson's poor performance. (*Id.* at 114-15.)

Plaintiff explains that she did not know Anderson's personal problems. (Pl.'s Dep. at 72.) But she says that she knew that Anderson was taking a lot of time off and leaving early to take her kids to visits and appointments. (*Id.*) Plaintiff was unsure, exactly, of what Anderson's children suffered from, but she suspected that one was autistic and the other had attention deficit hyperactivity disorder (ADHD). (*Id.*)

On April 26, 2012, Plaintiff initiated corrective action on Anderson. (Pl.'s Dep. at 123.) Plaintiff wrote the corrective action for Anderson's "[i]ntentional refusal or failure to carry out reasonable order or instructions," and for "[b]eing argumentative with a [s]upervisor and exhibiting over[-]disrespectful behavior." (Pl.'s Resp., Ex. 3, Corrective Action.) Plaintiff explains the interaction immediately leading up to the corrective action paperwork. (*Id.*) Plaintiff says that she approached Anderson to get an update on the day's work, since Anderson was set to go out in the field and not return until much later. (*Id.*) Plaintiff states that she asked Anderson what she would do for the remainder of the day. (*Id.*) Anderson responded that she was going to enter her notes into the system and then call her patients. (*Id.*) Plaintiff says that she asked Anderson why she would not complete the revisit log. (*Id.*) Anderson responded that she could not do it all. (*Id.*) Plaintiff says she asked Anderson why she was already preparing to not complete her work when there was ample time to complete all her work. (*Id.*) Plaintiff maintains that Anderson became argumentative and accused Plaintiff of talking to her like a child. (*Id.*) Plaintiff recounts that Anderson stated that she would not complete the revisit log. (*Id.*) Plaintiff explains that she and Anderson were arguing in front of the staff and that she eventually asked Anderson to go into her office to continue the discussion. (*Id.*) Plaintiff says that Anderson declined, left work, and returned twenty-five minutes later, still unwilling

to talk. (*Id.*) Plaintiff states that Anderson said her anxiety was too high and that "maybe" she could meet with Plaintiff at some other time. (*Id.*) Plaintiff reinforces that Anderson never completed the work that she asked her to complete. (*Id.*) In the recommendation section, Plaintiff recounts Anderson's repeated failings over the years. (*Id.*) Plaintiff states that Anderson does not account for her failures, refuses to take instructions, and has poor judgment that affects her work life and the staff's. (*Id.*) Plaintiff recommends that Anderson be put on an improvement plan. (*Id.*)

Stevenson prevented Plaintiff from filing the corrective action with the human resources department. Plaintiff says that Stevenson told her not to send the corrective action to Defendant's human resources department, and that Plaintiff should just put the corrective action in Anderson's file. (Pl.'s Dep. at 65-66.)

Anderson refused to sign the corrective action.[1] Anderson refused to sign the correction action when she met with Plaintiff and Stevenson, almost a month after the April, 2012 incident. (Pl.'s Resp., Ex. 3, Corrective Action.) Plaintiff explains that Anderson was not remorseful about the corrective action. (Pl.'s Dep. at 124.)

After she wrote the corrective action about Anderson, Plaintiff claims that Stevenson began to harass her and treat her unfairly. (Pl.'s Dep. at 64.) Plaintiff says that Stevenson even told her that she can leave the office. (*Id.*) Plaintiff states that Stevenson treated her unfairly. (*Id.* at 61.) Stevenson did so, Plaintiff claims, by terminating her, harassing her,

---

[1] Plaintiff states that she had a corrective action meeting with Anderson. (Pl.'s Dep. at 132.) At the meeting, Plaintiff recounts that Anderson would not sign the corrective action, so Plaintiff prepared a summary of the meeting. (*Id.* at 131-32.) Also at the meeting, Plaintiff recounts that Anderson told her that she did not have to report to her, because Stevenson told Anderson that Anderson could go directly to her. (*Id.* at 132.) Plaintiff summarizes that Anderson felt that she did not have to take orders from Plaintiff. (*Id.*)

4

and being biased towards her because she wrote up a corrective action for Anderson. (*Id.*) Plaintiff claims that Stevenson wrote her up because Plaintiff told Stevenson that she was being biased and unfair to Anderson. (*Id.*) Plaintiff states that Stevenson gave Anderson preferential treatment. (*Id.* at 64.) The preferential treatment, Plaintiff alleges, took the form of allowing Anderson to continue having poor work performance. (*Id.* at 69.) The harassment took the form of Stevenson assigning more work to Plaintiff and suggesting that Plaintiff go to another office location. (*Id.* at 124.)

Plaintiff states that she told her friends at work that, since she wrote the corrective action, Stevenson harassed her, and told her that she needed to find someplace else to work because the unit was no longer a good fit for her. (Pl.'s Dep. at 141.)

On May 23, 2012, Stevenson sent her boss an email about Plaintiff. (Pl.'s Resp., Ex. 4.) In the email, Stevenson told Laura Sudo that Plaintiff had expressed "displeasure" with her current position and that she did not feel valued or supported. (*Id.*) Stevenson informed Sudo that Plaintiff had decided to look for other opportunities. (*Id.*) Stevenson stated that she supported Plaintiff's decision because Plaintiff was dividing the office. (*Id.*) Stevenson then stated that Plaintiff had made the office "anti-leadership." (*Id.*) Stevenson stated that she would like to assist Plaintiff with her transition. (*Id.*) She asked Sudo to have Plaintiff relinquish her supervisor position on June 3, 2012, and then have her return to the field or transfer to another office. (*Id.*)

On June, 6, 2012, Bronikowski met with Plaintiff. (Pl.'s Resp., Ex. 5.) Plaintiff did not want Stevenson at the meeting, so she was not there. (*Id.*) A record of the meeting shows that Bronikowski told Plaintiff that she was not taking "accountability for her actions." (*Id.*) Bronikowski further related that staff had heard Plaintiff say that she was on the next train

out, meaning that she could not wait to get out of her current job situation. (*Id.*) At the meeting, Bronikowski gave Plaintiff two options to end her current employment situation. (*Id.*) Bronikowski first offered Plaintiff the ability to do field work at a lower pay rate until she found new work. (*Id.*) She then offered Plaintiff one month's pay with immediate resignation. (*Id.*) Plaintiff chose to take thirty days of pay and resigned. (Def.'s Mot., Ex. 8, Pl.'s Resignation Letter.) Bronikowski did find that some of Plaintiff's complaints were legitimate, but she still chose to end Plaintiff's current employment position. (Pl.'s Resp., Ex. 5.)

Plaintiff claims that, during the meeting, Bronikowski told her that Stevenson told her that Plaintiff was unhappy. (Pl.'s Dep. at 125.) Bronikowski then suggested that Plaintiff leave since she was unhappy. (*Id.*) Plaintiff states that Bronikowski said that Plaintiff did not have to go to another office and should look inside the system. (*Id.* at 126.) Within a month of her termination, Plaintiff started a new position in Canton, Michigan, working for the Heartland medical system as the Director of Customer Delivery. (Pl.'s Dep. at 14.)

## II. Rule 56 motion for summary judgment standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if

the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. Analysis

Plaintiff argues that Defendant retaliated against her, by terminating her, for complaining about the favorable treatment Stevenson was showing to Anderson, who allegedly has children with special needs.[2] There is no dispute, though, that Plaintiff herself does not have a disability. Because neither the ADA nor the PWDCRA creates a cause of action for Plaintiff, the Court grants Defendant's motion for summary judgment.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Claims under the PWDCRA 'essentially track those under [the ADA].'" *Demyanovich v. Cadon Plating & Coatings, LLC*, ___ F.3d

---

[2]In her own words: "My complaint is that Lillian is biased and showing preferential treatment to LaQuita. That's the complaint. That is my complaint here. That is why I was terminated, because LaQuita has kids that were like Lillian's kids and she showed her favoritism. That's my complaint here. The corrective action, that's not the complaint. The complaint is that I was terminated because I issued complaint to LaQuita that Lillian plays favoritism to. That's why we are here. It doesn't have anything to do with the time in which it was issued. I was terminated after it was issues . . . the day Lillian composed this fictitious email that now all of a sudden I'm anti-leadership[.]" (Pl.'s Dep. at 149.)

\_\_\_, \_\_\_\_ WL \_\_\_\_ (6th Cir. Mar. 28, 2014)(citation omitted, insertion in *Demyanovich*.).[3]

To establish a prima facie disability discrimination case, Plaintiff must show that (1) she is disabled, (2) she is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) she suffered an adverse employment action because of her disability. *Demyanovich v. Cadon Plating & Coatings, LLC*, \_\_\_ F.3d \_\_\_, \_\_\_\_ WL \_\_\_\_ (6th Cir. Mar. 28, 2014) (citation omitted).  Plaintiff must also establish that her disability was a "but for" cause of the adverse employment action.  *Id.* (citation omitted).

A person is disabled under the ADA when she has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" when there is a "record of such an impairment;" or she is "regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).  An individual can establish "being regarded as having such an impairment" "if the individual establishes that he or she has been subjected to an action prohibited . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

If a plaintiff can establish a prima face case of discrimination, then the defendant has the opportunity to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Gribcheck v. Runyon*, 245 F.3d. 547, 550 (6th Cir. 2001) (citation omitted).  If the defendant brings forth such a

---

[3]"An employment agency shall not fail or refuse to refer for employment, or otherwise discriminate against an individual because of a disability or classify or refer for employment an individual on the basis of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position." Mich. Comp. Laws § 37.1203.

reason, to still succeed on a claim, a plaintiff must then prove, by a preponderance of the evidence, that the reasons the defendant offers were pretext for discrimination. *Id.* (citation omitted). A court must ultimately ask "did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citation omitted). To aide in that ultimate question's answer, courts have generally asked three questions: (1) does the employer's proffered reason for termination have any basis in fact; (2) did the reason actually motivate the employer's action; or (3) were the proffered reasons sufficient to motivate the employer's actions? *Id.* (citation omitted).

Plaintiff argues that she can establish a prima facie case of ADA and PWDCRA disability discrimination. (Pl.'s Resp. at 6.) She alleges that she engaged in a protected activity "when she complained to Stevenson that Stevenson's favoritism for Anderson on the basis of Anderson's association with a disabled person was unfair to the other individuals in the office (including Plaintiff) and made it impossible for Plaintiff to properly supervise Anderson." (*Id.*) Plaintiff also alleges that she "engaged in protected activity by diligently pressing Stevenson to give Anderson notice of the corrective action, and appealing to Bronikowski when her complaints to Stevenson were unsuccessful in persuading Stevenson to address what Plaintiff in good faith perceived as unlawful reverse associational disability discrimination." (*Id.*)

Plaintiff maintains that, "regardless" of whether a reverse associational disability discrimination claim is cognizable, the finder-of-fact could reasonably conclude that Plaintiff pressed the issue in a good faith belief that the ADA or PWDCRA protected her and her coworkers from being subjected to less favorable employment. (Pl.'s Resp. at 7.)

Defendant argues that the ADA and the PWDCRA do not provide for a reverse-disability cause of action. (Def.'s Mot. at 7.) Defendant suggests that such a cause of action would "eviscerate" the ADA and the PWDCRA's purposes. (*Id.*)

Defendant also argues that Plaintiff cannot establish a prima facie case of disability discrimination. (Def.'s Mot. at 9-10.) Defendant argues that Plaintiff cannot establish that she engaged in a legally protected activity. (*Id.*) Defendant then goes through the *McDonell-Douglas* burden shifting framework and offers arguments where Plaintiff's prima facie case fails at each stage of the framework. Defendant finally argues that it has offered a legitimate business reason for terminating Plaintiff and that she cannot establish that that reason was pretext for disability discrimination. (Def.'s Mot. at 22.)

The Court finds that Defendant is correct–the ADA explicitly and the PWDCRA implicitly do not create a cause of action for Plaintiff. The Court also finds that Plaintiff cannot establish that she partook in a protected activity, she therefore cannot establish even the first element of a prima facie case of disability discrimination.

The ADA explicitly prohibits the type of claim that Plaintiff advances. 42 U.S.C. § 12201(g) provides: "[n]othing in this chapter shall provide the basis for a claim by an individual without a disability that the individual was subject to discrimination because of the individual's lack of disability." Here, Plaintiff is making the exact argument that § 12201(g) prohibits, that she was subject to discrimination because she did not have a disability.

Case law also exists from around the country that these "reverse-disability" discrimination claims fail as a matter of law. *See Carrier v. Paige*, 159 F.3d 1357, 1998 WL 699367, at *2 (5th Cir. 1998) (Table) (noting that the plaintiff had offered "no authority for

10

the proposition that the ADA creates a cause of action for 'reverse disability discrimination,' nor [was] there any language in the ADA providing such a cause of action."); *Carvajal v. Pride Industries, Inc.*, 10-2319, 2013 WL 1728273, at*9 (S.D.Cal. Apr. 22, 2013) (rejecting the plaintiff's ADA claim because he alleged animus towards individuals that did not have a disability; and citing 42 U.S.C. § 12201(g).); *Hamilton v. Trail*, 09-496, 2011 WL 2971223 (E.D.Tex. June 14, 2011), adopted by 2011 WL 2970842 (E.D.Tex. July 21, 2011) (noting that the ADA does not permit reverse-disability discrimination claims.) (The plaintiff claimed that the defendant treated a person receiving disability benefits more favorably than him because he did not have a disability.).

Given the language of the statutes and case law, the Court finds that Plaintiff's reverse-disability discrimination claim fails as a matter of law.

Plaintiff has additionally not shown that she engaged in a protected activity as the ADA or PWDCRA contemplates. Plaintiff argues that her complaint to Stevenson and Bronikowski was protected activity that 42 U.S.C. § 12203(a) prohibits, a retaliation cause of action. That section provides:

> [n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).[4] To establish a prima facie case of retaliation, a plaintiff "bears the initial burden to establish a prima facie case of retaliation, which requires a showing that

---

[4]The PWDCRA's analogous section provides: "A person . . . shall not . . .[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.1602(a).

11

(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)(citations omitted). As the Sixth Circuit has recently stated, though, "[t]he ADA is not . . . a catchall statute created a cause of action for any workplace retaliation[.]" *Id.* The ADA "protects individuals only from retaliation for engaging in, or aiding another who engaged in, activity covered by the ADA." *Id.* "Protected activity typically refers to act taken to protest or oppose a statutorily prohibited discrimination." *Id.* (citation omitted).[5]

Here, Plaintiff has not pointed to any action that the ADA has "made unlawful." *See Rorrer*, 743 F.3d at 1046 (holding that the ADA does not protect an employee when the employee is not asserting any claims of discrimination) (citation omitted). Plaintiff alleges that her protected activity is her reporting of favoritism to Stevenson. Favoring a person, associated or not associated with a disabled person, is not a violation of the ADA. While the Court, as it accepts Plaintiff's allegations as true, is sympathetic with the situation that faced Plaintiff, the Court cannot create a cause of action where one does not exist. Not

---

[5]The Court has reviewed Plaintiff's cases that she uses to argue that she engaged in a protected activity. Those cases involved a plaintiff who had requested a "reasonable accommodation." Those cases are distinguishable. The cases generally stand for the proposition that a plaintiff can state a retaliation cause of action if they "reasonably believed" they were entitled to the accommodation, even if circumstances revealed they were not disabled and thus not entitled to an accommodation. *See Baker v. Windsor Republic Doors*, 06-01137, 2009 WL 1231035, at *6 (W.D.Tenn. May 1, 2009). Here, the Court will not extend the ADA or the PWDCRA to cover Plaintiff's situation. Plaintiff has not persuaded the Court that complaining to a supervisor about not allowing her to do her job–issuing corrective action to another employee–is protected activity. Nor has Plaintiff brought forth any evidence that she made a charge as contemplated by the ADA.

everything that is unfair gives rise to a lawsuit. Plaintiff does not have a disability discrimination or retaliation lawsuit. She has brought forth no legal argument that the ADA or PWDCRA entitles her to relief.

Because the Court finds that Plaintiff does not have a cause of action because she has not identified an actionable protected activity, the Court does not discuss the remaining arguments that Defendant raises concerning the *McDonell-Douglas* framework.

## IV. Conclusion

For the above-stated reasons, the Court GRANTS Defendant's motion for summary judgment.

So ordered.

                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: April 21, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 21, 2014, by electronic and/or ordinary mail.

                s/Johnetta M. Curry-Williams
                Case Manager
                Acting in the Absence of Carol Bethel